**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MOONEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUNESIS PHARMACEUTICALS, INC., SOL MERGER SUB, INC., VIRACTA THERAPEUTICS, INC., DAYTON MISFELDT, STEVE R. CARCHEDI, STEVEN B. KETCHUM, NICOLE ONETTO, HOME L. PEARCE, DAVID C. STUMP, H. WARD WOLFF, and JAMES W. YOUNG,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, James Mooney ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Sunesis Pharmaceuticals, Inc. ("Sunesis" or the "Company"), against Sunesis, the Company's Board of Directors (the "Board" or the "Individual Defendants,"), Viracta

Therapeutics, Inc. ("Parent"), and Sol Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Viracta," and collectively with Sunesis and the Board, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Viracta as a result of an unfair process for an unfair price, and to enjoin a proposed all stock reverse merger transaction valued at approximately $43.9 million (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a November 30, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, on the closing of the Merger, Sunesis stockholders will own only approximately 14% of the combined company on a fully diluted basis using the treasury stock method.  As a result of the Proposed Transaction, Sunesis shareholders will be highly diluted and not able to fairly take part in the future of the combined company.

3.     Thereafter, on December 22, 2020, Sunesis filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.     The dubious nature of the Proposed Transaction is laid bare considering the complete lack of merger consideration provided to Sunesis stockholders.  Notably the only effect that the consummation of the Proposed Transaction will have on Plaintiff and other Sunesis public stockholder's shares of Sunesis is to make them less valuable by diluting them.

5.     In addition, the Proposed Transaction is unfair and undervalued for a number of reasons.  Significantly, the Registration Statement describes an insufficient sales process in which the Board rushed through an inadequate "sales process" that resulted in a transaction offering no merger consideration whatsoever to stockholders of Sunesis.

6.     In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Sunesis without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii)

engineering the Proposed Transaction to benefit themselves and/or Viracta without regard for Sunesis public stockholders. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Sunesis stockholders.

7.     Next, it appears as though the Individual Defendants have entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration. Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

8.     In further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on December 22, 2020 with the SEC in an effort to solicit stockholders to vote their Sunesis shares in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Sunesis stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Sunesis, provided by Sunesis to the Company's financial advisors MTS Health Partners L.P. ("MTS") for use in its financial analyses; (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, MTS.

9.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class. This action seeks to enjoin the Proposed

Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

10.    Plaintiff is a citizen of Maryland and, at all times relevant hereto, has been a Sunesis stockholder.

11.    Defendant Sunesis is a biopharmaceutical company that develops and commercializes novel therapeutics in the areas of thrombosis and other hematologic disorders and inflammation in the United States. Sunesis is incorporated under the laws of the State of Delaware and has its principal place of business at 395 Oyster Point Boulevard, Suite 400, South San Francisco, CA.  Shares of Sunesis common stock are traded on the NasdaqGS under the symbol "SNSS."

12.    Defendant Dayton Misfeldt ("Misfeldt") has been a Director of the Company at all relevant times.  In addition, Misfeldt serves as the interim Chief Executive Officer ("CEO").

13.    Defendant Steve R. Carchedi ("Carchedi") has been a director of the Company at all relevant times.

14.    Defendant Steven B. Ketchum ("Ketchum") has been a director of the Company at all relevant times.

15.    Defendant Nicole Onetto ("Onetto") has been a director of the Company at all relevant times.

16.    Defendant Home L. Pearce ("Pearce") has been a director of the Company at all relevant times.

17.    Defendant David C. Stump ("Stump") has been a director of the Company at all relevant times.

18.    Defendant H. Ward Wolff ("Wolff") has been a director of the Company at all relevant times.

19.    Defendant James W. Young ("Young") has been a director of the Company at all relevant times. In addition, Young serves as the Company's Chairman of the Board.

CLASS ACTION COMPLAINT

20.     Defendants identified in ¶¶ 12 - 19 are collectively referred to as the "Individual Defendants."

21.     Defendant Parent is a precision oncology company targeting virus-associated malignancies. Viracta was founded in 2007 and is headquartered in Cardiff, CA.

22.     Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

24.     Personal jurisdiction exists over each defendant either because the Company conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Sunesis has its principal place of business located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Sunesis common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes

Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

    27.    This action is properly maintainable as a class action because:

    a.  The Class is so numerous that joinder of all members is impracticable.  As of November 11, 2020, there were 18,093,000 shares of Sunesis common stock outstanding. The actual number of public stockholders of Sunesis will be ascertained through discovery;

    b.  There are questions of law and fact which are common to the Class, including *inter alia*, the following:

      i.  Whether Defendants have violated the federal securities laws;

      ii.  Whether Defendants made material misrepresentations and/or omitted material facts in the Preliminary Proxy; and

      iii.  Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

    c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

    d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

    e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.   Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

28.   By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Sunesis and owe the Company the duties of due care, loyalty, and good faith.

29.   By virtue of their positions as directors and/or officers of Sunesis, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Sunesis to engage in the practices complained of herein.

30.   Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.   act with the requisite diligence and due care that is reasonable under the circumstances;

b.   act in the best interest of the company;

c.   use reasonable means to obtain material information relating to a given action or decision;

d.   refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.   avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

31.   In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Sunesis, are obligated to refrain from:

a.   participating in any transaction where the directors' or officers' loyalties are divided;

b.   participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.   unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

32.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Sunesis, Plaintiff and the other public stockholders of Sunesis, including their duties of loyalty, good faith, and due care.

33.   As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Sunesis common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

34.   Sunesis focuses on the development and commercialization of targeted inhibitors for the treatment of hematologic and solid cancers. Its lead product candidate is vecabrutinib, a non-covalent inhibitor of Bruton's tyrosine kinase (BTK), which is in Phase 1b/2 clinical trial for

the treatment of chronic lymphocytic leukemia, mantle cell lymphoma, and other B-cell malignancies. The Company is also developing SNS-510, which is in preclinical pharmacology studies for the treatment of solid tumor and hematologic malignancies; various other partnered programs, such as TAK-580, a pan-Raf inhibitor program that is in Phase 1 clinical trial for the treatment of pediatric low-grade glioma; and vosaroxin, an anti-cancer quinolone derivative that intercalates DNA and inhibits topoisomerase II. It has a collaboration agreement with Biogen Idec MA, Inc. to discover, develop, and commercialize small molecule BTK inhibitors; and license agreement with Takeda Pharmaceutical Company Limited to develop and commercialize preclinical inhibitors of PDK1.

35.     The Company offers Andexxa, an antidote for patients treated with rivaroxaban and apixaban when reversal of anticoagulation is needed due to life-threatening or uncontrolled bleeding; and Bevyxxa (betrixaban), an oral, once-daily Factor Xa inhibitor for the prevention of venous thromboembolism in adult patients hospitalized for an acute medical illness. It is also advancing cerdulatinib, a dual spleen tyrosine kinase and janus kinases inhibitor in development for the treatment of hematologic cancers. In addition, the company is developing PRT2761, a Syk inhibitor that has completed Phase II clinical trial for the treatment for allergic conjunctivitis. Sunesis' lead program, magrolimab, is a monoclonal antibody against the CD47 receptor, a "don't eat me" signal that cancer cells commandeer to avoid being ingested by macrophages. This antibody is currently being evaluated in multiple clinical studies in patients with myelodysplastic syndrome, acute myeloid leukemia, non-Hodgkin lymphoma, and solid tumors.

36.     Speaking on the pipeline, Interim CEO, Defendant Misfeldt, commented on the Company's positive outlook, "We also shared further characterization of SNS-510 in vivo, demonstrating anti-tumor activity in a CDKN2A-deleted MEK-activated DLBCL mouse xenograft in the graph model. Additional promising data from investigator sponsored research is beginning to emerge as well, which we anticipate being presented at a medical meeting in the first half of next year. We continue to profile the drug and work to address expected PI3K inhibitor toxicities through dose regimen optimization strategies... We also have two partnered programs,

our pan-RAF inhibitor DAY101, formerly tact by TAK 580, partnered with Day One Biopharmaceuticals; and vosaroxin partnered with Denovo Biopharma. We are excited to have both of these companies -- or both of these programs advancing in the hands of these capable partners."

37.    Despite the potential of the Company's pipeline, the Individual Defendants have caused Sunesis to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

38.    As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to by any means necessary, even one that did not include actual compensation to the public stockholders of the Company.

39.    Primarily, the Registration Statement gives no adequate explanation for why the Board agreed to a transaction in which the public stockholders of the Company would receive nothing other than to have their shares diluted in value.

40.    Additionally, the Registration Statement indicates that no special committee of disinterested directors was created to run the sales process.

41.    The Registration Statement is also unclear as to the existence or nature of any non-disclosure agreement entered into between Sunesis and any potentially interested third party, including Viracta, as part of the sales process, and if the terms of any such agreements differed from one another.

42.    The Registration Statement also fails to adequately disclose the existence, nature, and/or background of any employment arrangements for current Company insiders with the surviving entity.

43.    It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

CLASS ACTION COMPLAINT

*The Proposed Transaction*

44.     On November 30, 2020, Sunesis and Viracta issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**SOUTH SAN FRANCISCO and SAN DIEGO**, Calif., November 30, 2020 (GLOBE NEWSWIRE) — Sunesis Pharmaceuticals, Inc. (Nasdaq: SNSS) and Viracta Therapeutics, Inc., a privately held precision oncology company targeting virus-associated malignancies, today announced they have entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Viracta will combine with Sunesis in an all-stock transaction (the "Merger"). The merged company will focus on the advancement and expansion of Viracta's clinical stage, precision oncology pipeline targeting virus-associated malignancies, including Viracta's lead program for the treatment of Epstein-Barr virus (EBV)-positive relapsed/refractory lymphomas. Upon completion of the Merger, the combined company will operate under the name Viracta Therapeutics, Inc. and intends to be listed on the Nasdaq Global Market under the ticker symbol "VIRX."

Viracta recently completed a $40 million Series E Preferred Stock equity financing led by aMoon, Israel's leading healthtech and life sciences venture fund, with participation from Taiwania Capital Management, Latterell Venture Partners, LifeSci Venture Partners and other existing investors.

Concurrent with the execution of the Merger Agreement, Viracta entered into an agreement for the sale of common stock in a private placement with an investor syndicate of institutional accredited investors led by BVF Partners L.P., with participation from aMoon, Ridgeback Capital Management, Surveyor Capital (a Citadel company), Logos Capital, Samsara Biocapital, Sectoral Asset Management, Janus Henderson Investors, LifeSci Venture Partners, and Serrado Capital LLC, as well as other institutional investors. The private placement is expected to result in gross proceeds to Viracta of approximately $65 million prior to the close of the Merger, subject to customary conditions. Upon the close of the Merger and related financing, the total cash balance of the combined company is expected to be approximately $120 million with an expected cash runway into 2024.

Viracta's lead program evaluates the all-oral combination of nanatinostat, its proprietary investigational drug, and valganciclovir in a Phase 2 clinical trial for the treatment of EBV-positive relapsed/refractory lymphomas. There are currently no approved therapies for EBV-associated cancers, which are responsible for over 140,000 deaths each year. Viracta's precision oncology and biomarker-driven combination product candidate targets EBV-positive cancer cells with an inducible synthetic lethality approach. Viracta plans to initiate a registration trial for the treatment of EBV-positive lymphoma in the first half of 2021, and also plans to initiate a Phase 1b/2 trial in EBV-positive solid tumors in 2021.

CLASS ACTION COMPLAINT

"This is a transformational event for Viracta, and I am very pleased to see the company brought forward into the public market," said Roger Pomerantz, M.D., F.A.C.P., Chairman of the Board of Directors of Viracta. "Importantly, Viracta's novel approach to targeting viral latency represents a completely new medical modality in the landscape of precision oncology, and today is the beginning of an important and exciting new phase in the company's evolution. EBV-induced malignancies are a high unmet medical need area, and the patients are waiting for novel therapies."

"After a thorough evaluation of strategic alternatives, the Board of Directors of Sunesis believes this merger is in the best interest of Sunesis' stockholders and has the potential to deliver near- and long-term value," said Dayton Misfeldt, Interim Chief Executive Officer of Sunesis. "This transaction will provide the resources for the combined company to leverage Viracta's scientific platform and pipeline to treat a range of virus-associated cancers and other serious diseases. Viracta shares our mission to develop important new targeted treatments for patients living with cancer, and we are enthusiastic about the prospect of carrying on that mission."

Ivor Royston, M.D., President and Chief Executive Officer of Viracta added, "The merger and our private financings represent a significant step in Viracta's growth as a late-stage development company. Our ongoing Phase 2 clinical trial for the treatment of EBV-positive lymphomas has produced encouraging efficacy and safety, and these transactions provide meaningful capital as we advance this program towards registration and expand our clinical pipeline. We look forward to building upon our clinical and corporate momentum to create shareholder and patient value, as we advance our important work to address the significant unmet needs in virus-associated malignancies."

About the Merger

Under the terms of the Merger Agreement, pending stockholder approval of the transaction, Viracta will merge with a wholly owned subsidiary of Sunesis, and stockholders of Viracta will receive shares of newly issued Sunesis common stock. Viracta stockholders are expected to own approximately 86% and Sunesis stockholders will own approximately 14% of the combined company on a fully diluted basis using the treasury stock method. The percentage of the combined company that Sunesis stockholders will own as of the close of the Merger may be subject to adjustment based on Sunesis' net cash.

The Merger Agreement has been unanimously approved by the Board of Directors of each company. The transaction is expected to close in the first quarter of 2021, subject to approvals by stockholders of each company and other customary closing conditions.

MTS Health Partners, L.P. is serving as the financial advisor to Sunesis, and Cooley LLP is serving as legal counsel to Sunesis. SVB Leerink LLC and Evercore Group

CLASS ACTION COMPLAINT

LLC served as placement agents in Viracta's private financings. Wilson Sonsini Goodrich & Rosati is serving as legal counsel to Viracta.

Management and Organization

The combined company will be led by Viracta's current management team and will be headquartered in Cardiff, California. The Board of Directors is expected to consist of seven members, including six members from Viracta's board and one member from Sunesis' board.

***The Inadequate Merger Consideration***

45.    Significantly, the Company's opportunity for future growth, and commitment to its in innovation establish the inadequacy of the merger consideration.

46.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the financial potential of Company's pipeline if trials are successful.

47.    The impact Sunesis' cancer therapeutics can have if successful indicates a future of financial success. This will come at the expense of the minority Sunesis shareholders who will be significantly diluted, retaining only approximately 14% of the pro forma ownership of the combined company while Viracta investors retain an approximately 86% stake in the combined company, according to the November 30, 2020 Press Release for the Proposed Transaction.

48.    As detailed in a November 26, 2020 Canaan Mountain Herald article, AMA Research reported a study regarding Global Acute Myeloid Leukemia Therapeutics Market Outlook to 2025. The study detailed "Acute myeloid leukemia is the second most common type (after acute lymphoblastic leukemia) of leukemia diagnosed in infants. Approximately 15% of children from birth to 19 years of age diagnosed with leukemia have acute myeloid leukemia." Sunesis was mentioned as a major player in the market for a therapy. The study estimates the market for Global Acute Myeloid Leukemia Therapeutics is to reach $2.2 billion by 2025.

CLASS ACTION COMPLAINT

49.     The Company seeks to utilize partnerships to ensure successful trials for such diseases. In December of 2019, Sunesis entered into licenses agreements with DOT Therapeutics-1, Inc. and Denovo Biopharma, LLC for commercial sales of pipeline therapies.

50.     Unfortunately, Sunesis investors will be highly diluted and not able to fairly take part in that success.

51.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Viracta at the expense of Sunesis stockholders, which clearly indicates that Sunesis stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

52.     The Merger Agreement contains certain provisions that unduly benefit Viracta by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Sunesis to pay up to $1,353,709 to Viracta, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Sunesis must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

53.     The Merger Agreement also contains a "Company Non-Solicitation" provision that restricts Sunesis from considering alternative acquisition proposals by, *inter alia*, constraining Sunesis's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited

1   bona fide *"Alternative Proposal"* if it constitutes or is reasonably calculated to lead to a *"Superior*

2   *Offer"* as defined in the Merger Agreement.

3   54.   Moreover, the Merger Agreement further reduces the possibility of a topping offer

4   from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Viracta

5   information in order to match any other offer, thus providing Viracta access to the unsolicited

6   bidder's financial information and giving Viracta the ability to top the superior offer.  Thus, a rival

7   bidder is not likely to emerge with the cards stacked so much in favor of Viracta.

8   55.   These provisions, individually and collectively, materially and improperly impede

9   the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

10   pursuing other reasonable and more valuable proposals and alternatives in the best interests of the

11   Company and its public stockholders.

12   56.   Accordingly, the Company's true value is compromised by the consideration

13   offered in the Proposed Transaction.

14   ***Potential Conflicts of Interest***

15   57.   The breakdown of the benefits of the deal indicate that Sunesis insiders are the

16   primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The

17   Board and the Company's executive officers are conflicted because they will have secured unique

18   benefits for themselves from the Proposed Transaction not available to Plaintiff and the public

19   stockholders of Sunesis.

20   58.   Notably, as a consequence of the consummation of the Proposed Transaction,

21   unvested stock options held by Company insiders will vest allowing such insiders to gain the

22   compensation associated with said options at a far accelerated rate.

23   59.   Moreover, certain employment agreements with certain Sunesis executives, entitle

24   such executives to severance packages should their employment be terminated under certain

25   circumstances.  These 'golden parachute' packages are significant, and will grant each director or

26   officer entitled to them millions of dollars, compensation not shared by Sunesis common

27   stockholders, and will be paid out as follows:

28

CLASS ACTION COMPLAINT

| Name | Cash (1) | Equity (2) | Perquisites / Benefits (3) | Other | Total |
|------|----------|------------|----------------------------|-------|-------|
| Dayton Misfeldt (4) | $         — | $         — | $         — | $         — | $         — |
| Judith A. Fox, Ph.D. (5) | 457,470 | — | 21,600 | — | 479,070 |
| Parvinder Hyare (5) | 366,670 | — | 32,934 | — | 399,604 |

60.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

61.     Thus, while the Proposed Transaction is not in the best interests of Sunesis stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

62.     On December 22, 2020, the Sunesis Board caused to be filed a materially misleading and incomplete Registration Statement with the SEC that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

63.     Specifically, the Registration fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

CLASS ACTION COMPLAINT

a.  Adequate reasoning as to why the Board agreed to a transaction in which the public stockholders of the Company would receive nothing other than to have their shares diluted in value;

b.  The specific reasoning as to why no special committee of disinterested directors was created to run the sales process;

c.  Sufficient information regarding the existence or nature of any non-disclosure agreement entered into between Sunesis and any potentially interested third party, including Viracta, as part of the sales process, and if the terms of any such agreements differed from one another; and

d.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Materially Misrepresentations Concerning Sunesis and Viracta's Financial Projections*

64.     The Registration Statement fails to provide material information concerning financial projections provided by Sunesis and Viracta management and relied upon by MTS in its analyses. The Registration Statement discloses management-prepared financial projections for the Company and Viracta which are materially misleading.

65.     The Registration Statement indicates that in connection with the rendering of MTS's fairness opinion, MTS reviewed, "reviewed certain internal financial analyses and forecasts relating to Sunesis's business (which is primarily related to the Day One Agreement) prepared by and provided to MTS by the management of Sunesis (the "Sunesis Projections") and certain internal financial analyses and forecasts relating to Viracta's business prepared by and provided to MTS by the management of Sunesis (the "Go-Forward Projections" and, together with the Sunesis

Projections, the "Projections"), which Go-Forward Projections reflected adjustments made by the management of Sunesis to certain financial analyses and forecasts relating to Viracta's business prepared by management of Viracta and provided to Sunesis.".

66.    Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Sunesis and Viracta management provided to the Board and MTS.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

67.    First and foremost, the Registration Statement fails to provide any projection information for Sunesis itself, providing only a "Liquidation Analysis" with no data purporting to show estimates for the future financial health of the Company.  This is especially notable as MTS's fairness opinion indicates such projections were created and provided to them by the Board (the "Sunesis Projections") for the purposes of its Analyses, yet the same were provided in the Registration Statement.  Such a lack of information completely undercuts any ability by Plaintiff or other Sunesis public stockholders to estimate the future value of their stock and make an informed decision regarding whether to vote for the Proposed Transaction.

68.    With respect to the "Liquidation Analysis", the Registration Statement fails to provide material information concerning the following metrics:

    a.    Gross revenue based on epidemiological build of pediatric brain cancer population;

    b.    The specific inputs and assumptions used to calculate the peak penetration rate of 30% in the U.S.;

    c.    The specific inputs and assumptions used to calculate 1.0x revenue multiplier applied to U.S. sales to represent rest of world sales; and

    d.  The discount rate applied to the equity stake valuation to for the account for the illiquidity of the equity; and

    e.  The specific inputs and assumptions used to the discount rate applied to the equity stake valuation to for the account for the illiquidity of the equity;

69.    With respect to the "Preliminary Analysis" – which is a Sunesis' management developed preliminary internal financial forecast for Viracta based on materials provided by Viracta's management, industry metrics and the judgment of Sunesis' management – the Registration Statement fails to provide material information concerning the financial projections. Specifically, the Registration Statement fails to disclose material line items for the following:

    a.  Gross Profit, including the material line items of cost of goods sold, royalties payable, and royalties and milestones receivable; and

    b.  Operating income, including the material line items of research and development expenses, sales and marketing expense, and general and administrative expense.

70.    With respect to the "Go-Forward Projections" – which is the Preliminary Analysis adjusted by Sunesis management to produce projections reflective of Sunesis management's assumptions regarding the probability of success applicable to Viracta's assets – the Registration Statement fails to provide material information concerning the financial projections. Specifically, the Registration Statement fails to disclose material line items for the following

    a.  Gross Profit, including the material line items of cost of goods sold, royalties payable, and royalties and milestones receivable;

    b.  Operating income, including the material line items of research and development expenses, sales and marketing expense, and general and administrative expense;

    c.  Net Income, including further explanation of the material line item of taxes, namely the specific inputs and assumptions used to calculate the applied tax rate of 26%; and

CLASS ACTION COMPLAINT

d.  Unlevered free cash flow, including the material line items of depreciation and amortization, capital expenditures, and changes in net working capital.

71.  This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

72.  Without accurate projection data presented in the Registration Statement, Plaintiff and other stockholders of Sunesis are unable to properly evaluate the Company's true worth, Viracta's true worth, the accuracy of MTS's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by MTS*

73.  In the Registration Statement, MTS describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

74.  Most notably, the Registration Statement fails to provide any analyses by MTS purporting to show Sunesis's future value as a standalone company, instead only providing a "Liquidation Analysis".  Such a lack of information completely undercuts any ability by Plaintiff or other Sunesis public stockholders to estimate the future value of their stock and make an informed decision regarding whether to vote for the Proposed Transaction

75.  With respect to the Sunesis Valuation Analysis – *Liquidation Analysis*, the Registration Statement fails to include the specific reasoning as to why the Sunesis Board and Management directed MTS to assume "that the only material assets of Sunesis were its cash and any proceeds of monetization of the Day One Agreement and the Equity Stake, that no other assets

1    of Sunesis have any material value and that Sunesis does not currently, and does not intend in the

2    future to, conduct any activity that may result in the generation of revenue other than the receipt

3    of royalties and/or proceeds from the Day One Agreement".

4      76. With respect to the Viracta Valuation Analysis – *Discounted Cash Flow Analysis*

5    the Registration Statement fails to provide the following:

6       a. The revenue achievement of 75% to 125%, as provided by Sunesis's

7        management;

8       b. The specific inputs and assumptions used to calculate the revenue achievement

9        of 75% to 125%, as provided by Sunesis's management;

10      c. The specific inputs and assumptions used to calculate the cumulative regulatory

11       probability of success in lymphoma with respect to Viracta's lead asset

12       ("Lymphoma Cumulative Probability of Success") of 20% to 40%, as provided

13       by Sunesis's management;

14      d. The specific inputs and assumptions used to calculate the peak penetration of

15       the addressable U.S. lymphoma market ("U.S. Lymphoma Peak Penetration")

16       equal to 25% to 45%, as provided by Sunesis's management;

17      e. The inputs and assumptions used to calculate Viracta's weighted average cost

18       of capital of 11% to 13%;

19      f. The present value of cash flows to be generated by Viracta; and

20      g. The specific inputs and assumptions used to assume no terminal value.

21     77. With respect to the Viracta Valuation Analysis – *Public Trading Comparable*

22   *Companies Analysis,* the Registration Statement fails to provide metrics for each compared

23   company.

24     78. With respect to the Viracta Valuation Analysis – *IPO Comparable Analysis* the

25   Registration Statement fails to provide metrics for each compared company.

26

27

28

CLASS ACTION COMPLAINT

79.     With respect to the *Relative Valuation Analysis* the Registration Statement provides information regarding the "relative valuations resulting from the standalone equity value ranges calculated for Sunesis…", however as stated above, no such proper analysis were done.

80.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

81.     Without the omitted information identified above, Sunesis's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Sunesis's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Stockholders

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

82.     Plaintiff repeats all previous allegations as if set forth in full herein.

83.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

84.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Sunesis.

85.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Sunesis by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Sunesis to its public stockholders.

86.    Indeed, Defendants have accepted an offer to sell Sunesis at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

87.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

88.    The Individual Defendants dominate and control the business and corporate affairs of Sunesis, and are in possession of private corporate information concerning Sunesis's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Sunesis which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

89.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

90.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Sunesis's assets and have been and will be prevented from obtaining a fair price for their common stock.

91.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

92.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

**Against Defendant Sunesis, Viracta, and Merger Sub**

93.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

94.    Defendant Sunesis, Viracta, and Merger Sub knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

95.    As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

96.    Plaintiff and the members of the Class have no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

97.    Plaintiff repeats all previous allegations as if set forth in full herein.

98.    Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

99.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect

CLASS ACTION COMPLAINT

of any security (other than an exempted security) registered pursuant to section 78l of this title.

100.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following: No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

101.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

102.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

103.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

104.    The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Individual Defendants)**

105.    Plaintiff repeats all previous allegations as if set forth in full herein.

106.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

107.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

108.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Sunesis' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that

the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

109.    The Individual Defendants acted as controlling persons of Sunesis within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Sunesis to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Sunesis and all of its employees. As alleged above, Sunesis is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Sunesis and obtain a transaction which is in the best interests of Sunesis and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained

1    because of the wrongs complained of herein;

2    G.    Awarding Plaintiff, the costs of this action, including reasonable allowance for

3    Plaintiff's attorneys' and experts' fees; and

4    H.    Granting such other and further relief as this Court may deem just and proper.

5    ## DEMAND FOR JURY TRIAL

6    Plaintiff hereby demands a jury on all issues which can be heard by a jury.

7

8    Dated: January 8, 2021                    **BRODSKY & SMITH, LLC**

9                                    By: _____
10                                    Evan J. Smith, Esquire (SBN 242352)
11                                    esmith@brodskysmith.com
                                    Ryan P. Cardona, Esquire (SBN 302113)
12                                    rcardona@brodskysmith.com
                                    9595 Wilshire Blvd., Ste. 900
13                                    Phone: (877) 534-2590
                                    Facsimile (310) 247-0160
14

15                                    *Attorneys for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28